Frank Sommers (State Bar No. 109012)
Andrew Schwartz (State Bar No. 100210)
SOMMERS & SCHWARTZ LLP
550 California Street
The Sacramento Tower, Suite 700
San Francisco, CA 94104
Telephone: (415) 955-0925
Facsimile: (415) 955-0927
ffs@sommersschwartz.com

Attorneys for Defendant
JOHN DOE

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NOTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

NORTHCLIFFE MEDIA LIMITED, a Private Limited Company of England and Wales ,

Plaintiff,

vs.

JOHN DOE, an unknown individual or entity,

Defendant.

**Case No.: CV 12 3536 MEJ**

**NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH SUBPOENA**

**SPECIAL APPEARANCE**

**DATE:** September 6, 2012
**TIME:** 10:00 a.m.
**DEPT.:** B
**JUDGE**: Magistrate-Judge Maria-Elena James

Action Filed: July 6, 2012
Trial Date: None

TO PLAINTIFF-RESPONDENT NORTHCLIFFE MEDIA, LTD., AND ALL COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN that Defendant-Movant John Doe hereby moves the District Court in the Northern District of California to quash the Subpoena issued by Plaintiff-Respondent Northcliffe Media Ltd on or around July 12, 2012, to non-party company Twitter, Inc. from the Northern District of California (in which Twitter is located) seeking all documents in Twitter's possession relating to three usernames: "UnSteveDorkland," "SteveDorkland" "Northcliffestev." The subpoena was issued after the instant action was filed July 6, 2012. The motion will be heard on September 6, 2012 at 10:00 a.m. in Courtroom B of the U.S. District Court located on the 15th floor of 450 Golden Gate Avenue, San Francisco, CA, or at such other time as the Court may subsequently specify.

As discussed in the accompanying Memorandum of Points and Authorities, Plaintiff's Subpoena violates the provisions of Rule 26, and also fails to meet the First Amendment requirements imposed on litigants attempting to use the discovery process to obtain identity-related information regarding anonymous online speakers. This Motion, made pursuant to FED. R. CIV. P.45(c) and CAL.CIV. PROC. CODE § 1987.1, is based on this Notice; on the attached Memorandum of Points and Authorities; the accompanying declaration of Frank F. Sommers and exhibits thereto; and on such argument as may be received by this Court. Defendant-Movant John Doe respectfully requests that this Court grant its Motion and quash the Subpoena of July 12, 2012, issued by Plaintiff-Respondent Northcliffe Media Ltd and served on Twitter, Inc.

Dated: July 31, 2012

SOMMERS & SCHWARTZ LLP

s/ Frank F. Sommers

By: Frank F Sommers
Attorneys for Defendant Doe

# TABLE OF AUTHORITIES

Page

## Cases

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) .......... 19

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) .......... 17, 18

*Baker v. Lafayette College*, 532 A.2d 399 (1987) .......... 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .......... 19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 17, 18

*Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182 (1999) .......... 11

*Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999) .......... 12

*Dendrite Int'l v. Doe No. 3*, 775 A.2d 756 (N.J. App. 2001) .......... 12, 13, 14

*Desai v. Clark*, 2011 U.S. Dist. LEXIS 84690 (N.D. Cal. Aug. 2, 2011) .......... 15

*Desai v. Clark, supra*, 2011 U.S. Dist. LEXIS 84690, 7-8 (N.D. Cal. Aug. 2, 2011) .......... 16

*Doe v. 2theMart.com*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001) .......... 11

*Doe v. Cahill*, 884 A.2d 451 (Del. 2005) .......... 12, 13

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) .......... 10

*Facebook, Inc. v. Power Ventures, Inc.*, 2010 U.S. Dist. LEXIS 93517 (N.D. Cal. July 20, 2010) .......... 18, 19

*Grandbouche v. Clancy*, 825 F.2d 1463 (10th Cir. 1987) .......... 12

*Greenbaum v. Google, Inc.*, 845 N.Y.S.2d 695 (N.Y. Sup. Ct. 2007) .......... 13

*Highfields Capital Mgmt. L.P. v. Doe*, 385 F. Supp. 2d 969, 974-976 (N.D. Cal. 2004) .......... 8,9,15,18, 20

*Independent Newspapers, Inc. v. Brodie*, 966 A.2d 432 (Md. 2009) .......... 13

*James v. San Jose Mercury News, Inc.*, 17 Cal. App. 4th 1, 12, 13, 20 Cal. Rptr. 2d 890 (1993) .......... 16

*Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 814 (9th Cir. 2003 .......... 9

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) .......... 18

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) .......... 10,11

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990) .......... 15,16

*Mobilisa, Inc. v. John Doe 1*, 170 P.3d 712 (Ariz. App. 2007) .......... 13

*Moyer v. Amador Valley Joint Union High School Dist.*, 225 Cal. App. 3d 720, 724, 275 Cal. Rptr. 494 (1990) ...... 15,16

*New York Times v. Sullivan*, 376 U.S. 254 (1964) .......... 11

*Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) .......... 18

*Powers v. Ohio*, 499 U.S. 400 (1991) .......... 16

*Reno v. ACLU*, 521 U.S. 844 (1997) .......... 11

*Rittenhouse v. Superior Court*, 235 Cal. App. 3d 1584 (Cal. App. Ct. 1991) .......... 9, 10

*Shelley v. Kraemer*, 334 U.S. 1 (1948) .......... 11

*Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433 (10th Cir. 1977) .......... 12

*Smith v. Maldonado*, 72 Cal. App. 4th 637, 645, 85 Cal. Rptr. 2d 397 (1999) .......... 15

*Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004) .......... 12

*Talley v. California*, 362 U.S. 60 (1960) .......... 11

*Theofel v. Farey-Jones*, 359 F.3d 1066, 1074-1075 (9th Cir. Cal. 2004) .......... 7

*United States ex rel Newsham v. Lockheed Missiles and Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) .......... 10

*Weller v. Am. Broad. Cos.*, 232 Cal. App. 3d 991, 1000, 283 Cal. Rptr. 644 (1991) .......... 16

**Statutes, Rules, Regulations and Secondary Authorities**

(Cal. Pen. Code § 502(c) .......... 15

18 U.S.C. § 1030 (Computer Fraud and Abuse Act) .......... 15

Cal. Civ. Code §§ 45 .......... 13

CAL. CIV. PROC. CODE § 1987.1 .......... 9

CCP Section 1987.1(b)(5) .......... 9

FED. R. CIV. P. 45 .......... 7, 9

Fed. R. Civ. P. 45(a)(1)(D) .......... 7

Fed. R. Civ. P. 45(c)(3)(A)(iii) .......... 9

Fed. R. Civ. P. 45(c)(3)(A)(iv) .......... 9

Fed. Rule Civ. Pro. Rule 26(d)(1) .......... 7

Federal Rule of Civil Procedure (FRCP) 26 .......... 7

Cal. Code Civ Prioc. .......... 2

California Comprehensive Computer Data Access and Fraud Act (Cal. Penal Code Section 502(c).) .......... 6

Computer Fraud and Abuse Act, 18 U.S.C. Section 1030 .......... 6

FED. R. CIV. P.45(c) .......... 2

Rule 26 .......... passim

Stored Communications Act (SCA) (18 U.S.C. [Section] 2701 *et seq.*) .......... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Counsel appear specially to quash an improper subpoena. Counsel contest the jurisdiction of this Court over Defendant Doe, and request leave to brief that issue separately, given the very short time between their engagement and the proposed August 1 disclosure by Twitter of Defendant's identity, which necessitated the immediate filing of the instant motion to quash.

The underlying identities of anonymous critics of powerful and public figures have a long and constitutionally-protected history in America. Plaintiff, ironically a British newspaper holding company, seeks to avoid those protections in its quest for the identity of an anonymous critic who has parodied its CEO on Twitter. It does this by ignoring Rule 26 and California and Federal law by issuing a subpoena to Twitter six days after filing the complaint, and three months before the Case Management Conference set by the Court for October 4. At no time did plaintiff's counsel request leave of Court for early discovery. The subpoena must be quashed.

Equally disturbing, plaintiff's complaint is devoid of a single quotation from the allegedly defamatory tweets, or a single evidentiary fact to support its additional causes of action for "hacking" or "impersonation." The complaint's conclusory claims reveal its true purpose- to be a stalking horse in support of Plaintiff's subpoena, which Plaintiff's counsel appear to have assumed would be unopposed, and hence obviating the need to carefully plead the complaint. In the alternative, counsel knew that actually pleading the content complained of would reveal that the tweets were a protected parody. The subpoena should be quashed, the complaint dismissed, and plaintiff's counsel sanctioned for their blatant disregard of the rules of this Court.

## II. FACTUAL BACKGROUND

### A. Rule 26 Violations

This action was filed July 6. The Court issued an Initial Case Management Order on July 12. That Order set out, among other dates, an October 4 Rule 26 Pretrial Conference hearing date. On July 10th, however, Plaintiff's counsel Lynda Zadra-Symes signed a subpoena seeking information from Twitter pertaining to three user accounts alleged to have been controlled by Defendant Doe..

That subpoena was served on Twitter on July 12th. At no time from filing this action until the filing of this motion have plaintiff's counsel sought leave of Court to conduct early discovery.

**B. Defendant John Doe**

Defendant John Doe is the anonymous author of a series of micro-blog posts ("tweets") posted on the Twitter service under usernames "@UnSteveDorkland," "@SteveDorkland" and "@Northcliffestev." Defense counsel was engaged on Thursday, July 26th. (Declaration of Frank Sommers –"Sommers Dec."- at § 1.) Counsel is appearing specially to quash the subpoena served on Twitter, without conceding that the complaint contains the requisite facts to permit the Court to conclude that it has jurisdiction over defendant Doe. (The complaint asserts, on information and belief, that jurisdiction is proper because plaintiff "directed" his tweets to Twitter's servers, which are asserted to be located in the Northern District. Complaint p. 1:22-24)

**C. Plaintiff Northcliffe Media Ltd.**

Plaintiff Northcliffe Media Ltd (Northcliffe") describes itself as one of "the leading local multimedia businesses in the United Kingdom," and asserts that it owns or manages "113 regional newspapers." (Complaint p. 1:27-28.) Plaintiff nowhere admits that it is the wholly-owned subsidiary of the Daily Mail and General Trust PLC (DMGT), which also owns the Daily Mail, a large UK newspaper. (Sommers Dec. at ¶ 2.) Despite alleging that the tweets defamed its CEO, it nowhere names him. It appears that Plaintiff's current CEO is Steve Auckland, (Sommers Dec. at ¶ 3) a fact that makes the parodic nature of tweets under the userid of "SteveDorkland" and variations thereof clear. The complaint lacks any statement of underlying facts in support of its claims. Instead, it first states that all allegations other than "as to Plaintiff and Plaintiff's acts," are "on information and belief as to all other matters." (Complaint p. 1, lines 3-4).

Plaintiff's allegations in support of its defamation claims are terse and conclusory:

> 9. Defendant posted numerous false and defamatory statements on those Twitter accounts about Plaintiff and Plaintiff's employees. Defendant, through these postings, further disclosed information obtained through unlawful means, and further used the posting to deliberately and maliciously harass Plaintiff's Chief executive Officer and other employees of Plaintiff."(Complaint paragraph 9, ln 5-9.)

Other than the above allegations, and other similar conclusions, the complaint does not quote a single syllable of any tweet allegedly posted by defendant. This alone requires the subpoena to be quashed.

Perhaps anticipating this objection, the complaint buries the defamation claim among causes of action for "hacking." based both on the federal Computer Fraud and Abuse Act, 18 U.S.C. Section 1030, and the California Comprehensive Computer Data Access and Fraud Act (Cal. Penal Code Section 502(c).) Those accusations concern plaintiff's speculation that defendant has improperly intruded into plaintiff's computer systems. Instead of facts, the complaint offers the following statements:

> 10. At least some of the information made public on Twitter by the Defendant was not known publicly, *and on information and belief, the only way such information could be obtained was by hacking into an email account at Plaintiff's business*." (Complaint, paragraph 10)(emphasis supplied.)

The complaint concludes with claim that Defendant Doe impersonated its CEO. None of the causes of action contain any factual allegations about the content of the tweets that support any of the hacking, defamation or impersonation allegations. Indeed, the mind reels at the idea that a posting under the name of "@SteveDorkland" could support a claim for a successful impersonation of "Steve Auckland, CEO" of plaintiff Northcliffe, but Plaintiff so alleges, without additional facts.

## III. LEGAL ARGUMENT

Plaintiff's subpoena served on Twitter should be quashed for the following reasons:

1. The complaint lacks any allegations to support jurisdiction over defendant;
2. The complaint violates Rule 26's prohibition on *any* discovery before the Court's 10/4 Case Management Conference;
3. Plaintiff has not requested permission for early discovery for any reason;
4. Plaintiff's complaint does not state a prima facie case for any of its causes of action, which therefore fall to the protections for anonymous speech which exist under Federal and California law.

### A. Plaintiff's Disregard Of Rule 26 Requires Quashing The Subpoena

The simplest reason for quashing the subpoena is plaintiff's counsels' disregard of the plain proscription of Federal Rule of Civil Procedure (FRCP) 26 against discovery from any source before the first status conference. The Rule states, in pertinent part:

> (d) Timing and Sequence of Discovery.
> (1) Timing. A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order. (Fed. Rule Civ. Pro. Rule 26(d)(1))

The Court's docket sheet nowhere shows that plaintiff's counsel requested leave of Court to engage in early discovery. For this reason alone, the subpoena should be quashed and counsel sanctioned. Such sanctions are not lightly requested, but rather should be awarded to reinforce the obligation imposed on counsel by their oath as officers of the court not to misuse the power delegated to them for partisan advantage:

> The subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused. Informing the person served of his right to object [**13] is a good start, see Fed. R. Civ. P. 45(a)(1)(D), but it is no substitute for the exercise of independent judgment about the subpoena's reasonableness. Fighting a subpoena in court is not cheap, and many [*1075] may be cowed into compliance with even overbroad subpoenas, especially if they are not represented by counsel or have no personal interest at stake. *Theofel v. Farey-Jones*, 359 F.3d 1066, 1074-1075 (9th Cir. Cal. 2004)

The *Theofel* court awarded $9,000 in attorneys' fees against counsel who issued a subpoena seeking both identify information and email content from the Internet Service Provider (ISP) used by defendants. The court found that the subpoenas violated the Stored Communications Act (SCA) (18 U.S.C. [Section] 2701 *et seq.*) because they sought protected content. The attorneys were sanctioned because the mere presentation of a document authorized by the court suggested to the ISP that it had an obligation to comply, and counsel were charged with knowledge of the subpoena's invalidity under the SCA, rendering the subpoena a "piece of paper masquerading as legal process," and thus made counsel liable when the ISP gave them what they asked for, notwithstanding its knowledge that it could object. *Id* at 1074.

The *Theofel* analysis applies here with equal force. Plaintiff's counsel should be sanctioned for requiring Defendant Doe to file this motion. Either the entire action is a fraud because there is no evidence to support the claims, and will be dismissed, or plaintiffs will be given an opportunity to amend and move for early discovery, and defense counsel will have to oppose that motion. In either instance, the costs of preparing and filing this motion should not have been necessary, and Plaintiff's counsel should be sanctioned by requiring them to pay the attorneys fees incurred in moving to quash. Defendant Doe requests that the Court ask Defendant to submit briefing on its costs in support of a sanctions order after the hearing on the instant motion.

**B. Plaintiffs Have Not Pled Facts For Defamation and the Subpoena Fails**

Plaintiff's attempt to secure the identity of Defendant Doe is also blocked by Federal and California law. Before the disclosure of an anonymous party's identity can be compelled, the Court must conclude that plaintiff's have pled a *prima facie* case for the underlying claims. *Highfields Capital Mgmt. L.P. v. Doe*, 385 F. Supp. 2d 969, 980-981 (N.D. Cal. 2004) Here, Plaintiff's both have not pled remotely enough facts to justify early discovery even if they make the requisite application, and cannot, as Doe's tweets are protected as parody. The Court must not allow Plaintiff to continue exerting the very type of pressure that courts in the Northern District have found an impermissible burden on the Constitutionally-protected right to criticize the powerful anonymously:

> A person like defendant has a real First Amendment interest in having his sardonic message reach as many people as possible -- and being free to use a screen name of the kind he used here carries the promise that more people will attend to the substance of his views. But if the court were to enforce plaintiffs subpoena, the court would be enabling plaintiff to impose a considerable price on defendant's use of one of the vehicles for expressing his views that is most likely to result in those views reaching the intended audience. That "price" would include public exposure of plaintiff's identity and the financial and other burdens of defending against a multi-count lawsuit -- perhaps in a remote jurisdiction. Very few would-be commentators are likely to be prepared to [**30] bear costs of this magnitude. So, when word gets out that the price tag of effective sardonic speech is this high, that speech likely will disappear. (emphasis supplied).
>
> *Highfields Capital Mgmt. L.P. v. Doe*, 385 F. Supp. 2d 969, 980-981 (N.D. Cal. 2004)

That is precisely what plaintiff Northcliffe and its corporate parent DMGT appear to intend here- to cauterize criticism by creating the spectacle that any critic will be subject to litigation "in a

remote jurisdiction." The Court should not permit this tactic to succeed, and should quash the subpoena.

**1. Applicable Legal Standard for Quashing the Subpoena**

Under the Federal Rules, a court may quash a subpoena if the subpoena "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." FED. R. CIV. P. 45(c)(3)(A)(iii), (iv). *See, e.g., Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 814 (9th Cir. 2003). Similarly, under CAL. CIV. PROC. CODE § 1987.1, a court may quash a subpoena and "make any other order as may be appropriate to protect the person from unreasonable or oppressive demands, including unreasonable violations of the right of privacy of the person." *See, e.g., Rittenhouse v. Superior Court*, 235 Cal. App. 3d 1584, 1587 (Cal. App. Ct. 1991). CAL. CIV. PROC. CODE § 1987.1(b)(5) specifically authorizes "[a] person whose personally identifying information … is sought in connection with an underlying action involving that person's exercise of free speech rights" to bring a motion to quash under section 1987.1.[1]

**2. The Right to Engage in Anonymous Speech is Protected by the First Amendment**

Under the broad protections of the First Amendment, speakers have not only a right to publicly express criticism – especially regarding matters of concern such as how newspapers are managed and consolidated – but also the right to do so anonymously. Accordingly, the First Amendment requires that those who seek to unmask vocal critics demonstrate a compelling need for such identity-related information before obtaining such discovery. No such need is implicated in this case.

[1] While technically procedural, the specifically articulated protection for anonymous speakers found in CAL. CIV. PROC. CODE § 1987.1 – and the corresponding attorney's fees provision set forth in section 1987.2 for movants who successfully quash discovery subpoenas seeking identity information – are undoubtedly substantive and are based on the same free speech concerns which animate California's anti-SLAPP statute. *See, e.g., United States ex rel Newsham v. Lockheed Missiles and Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (holding that California's state anti-SLAPP suit, while procedural, was manifestly substantive in design and intent and thus not barred in federal court under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). To the extent that Plaintiff seeks discovery in support of at least one non-federal claim challenging his exercise of his First Amendment rights, Doe's motion to quash is appropriate under not only FED. R. CIV. P. 45 but also CAL. CIV. PROC. CODE § 1987.1.

The United States Supreme Court has consistently defended the right to anonymous speech in a variety of contexts, noting that "[a]nonymity is a shield from the tyranny of the majority . . . [that] exemplifies the purpose [of the First Amendment] to protect unpopular individuals from retaliation . . . at the hand of an intolerant society." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995). *See also, e.g., id.* at 342 ("[A]n author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment."); Talley v. California, 362 U.S. 60, 64 (1960) (finding a municipal ordinance requiring identification on hand-bills unconstitutional, noting that "[a]nonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind."). Anonymity receives the same constitutional protection whether the means of communication is a political leaflet or an Internet message board. *See Reno v. ACLU*, 521 U.S. 844, 870 (1997) (there is "no basis for qualifying the level of First Amendment protection that should be applied to" the Internet). *See also, e.g., Doe v. 2theMart.com*, 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001) ("The right to speak anonymously extends to speech via the Internet. Internet anonymity facilitates the rich, diverse, and far ranging exchange of ideas."). And as discussed below, these fundamental rights protect anonymous speakers from forced identification, be they from overbroad statutes or angry targets of satire wielding unwarranted discovery requests.

### 3. Anonymous Speakers Enjoy a Qualified Privilege Under the First Amendment – Prima Facie Case and Balancing Test

Because the First Amendment protects anonymous speech and association, efforts to use the power of the courts[2] to pierce anonymity are subject to a qualified privilege. Courts must "be vigilant . . . [and] guard against undue hindrances to . . . the exchange of ideas." *Buckley v. Am. Constitutional Law Found*, 525 U.S. 182, 192 (1999). This vigilant review "must be undertaken and analyzed on a case-by-case basis," where the court's "guiding principle is a result based on a meaningful analysis and a proper balancing of the equities and rights at issue." *Dendrite Int'l v. Doe No. 3*, 775 A.2d 756, 761 (N.J. App. 2001). Just as in other cases in which litigants seek

[2] A court order, even if granted to a private party, is state action and hence subject to constitutional limitations. *See, e.g., New York Times v. Sullivan*, 376 U.S. 254, 265 (1964); *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948).

information that may be privileged, courts must consider the privilege before authorizing discovery. *See, e.g., Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004) ("Against the backdrop of First Amendment protection for anonymous speech, courts have held that civil subpoenas seeking information regarding anonymous individuals raise First Amendment concerns."); *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) (citing *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977)) ("[W]hen the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure."). As this Court described in an early Internet anonymity case, "[p]eople who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity." *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999).

The constitutional privilege to remain anonymous is not absolute. Plaintiffs may properly seek information necessary to pursue meritorious litigation. Id. at 578 (First Amendment does not protect anonymous Internet users from liability for tortious acts such as defamation); *Doe v. Cahill*, 884 A.2d 451, 456 (Del. 2005) ("Certain classes of speech, including defamatory and libelous speech, are entitled to no constitutional protection."). However, litigants may not use the discovery power to uncover the identities of people who have simply made statements the litigants dislike. Accordingly, courts evaluating attempts to unmask anonymous speakers in cases similar to the one at hand have adopted standards that balance one person's right to speak anonymously with a litigant's legitimate need to pursue a claim.

**a. The Prima Facie Requirement and Balancing Test**

The seminal case setting forth First Amendment restrictions upon a litigant's ability to compel an online service provider to reveal an anonymous party's identity is *Dendrite Int'l, Inc. v. Doe No. 3*, *supra*, in which the New Jersey Appellate Division adopted a test for protecting

anonymous speakers that has been followed by courts around the country[3] (including by this Court in *Highfields Capital Management*, *supra*, 385 F. Supp. 2d at 974-76):

(1) make reasonable efforts to notify the accused Internet user of the pendency of the identification proceeding and explain how to present a defense;

(2) set forth the exact statements that Petitioner alleges constitutes actionable speech;

(3) allege all elements of the cause of action and introduce prima facie evidence within the litigant's control sufficient to survive a motion for summary judgment; and,

(4) "[f]inally, assuming the court concludes that the plaintiff has presented a prima facie cause of action, the court must balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed."

*Dendrite*, 775 A.2d at 760-61.

As this decision accurately and cogently outlines the important First Amendment interests raised by the Defendant, and as this Court has already endorsed this approach in the past In *Highfields*, the holding and reasoning of *Dendrite* and its progeny should be applied here.

On the face of the current complaint, Plaintiff cannot meet even the first significant step of the *Dendrite/Highfields* First Amendment test that litigants seeking the disclosure of the identities of anonymous speakers articulated by the *Dendrite* and *Highfields* courts- that of specifying the speech complained of; consequently, the subpoena should be quashed.

### 4. Plaintiff Has Not Identified the Specific Allegedly Actionable Speech At Issue.

Plaintiff has not identified the specific allegedly actionable speech at issue. Assuming Doe's statements are lawful, they (and the identities of the speaker(s)) would be afforded Constitutional protection under the First Amendment. "Accordingly, the discovery of [Doe's] identity largely turns on whether his statements were defamatory or not." *Dendrite,* 775 A.2d at 766. Only by examining the allegedly actionable statements will the Court be able to determine

---

[3] *See, e.g.*, *Independent Newspapers, Inc. v. Brodie*, 966 A.2d 432, 457 (Md. 2009); *Mobilisa, Inc. v. John Doe 1*, 170 P.3d 712, 717-721 (Ariz. App. 2007); *Greenbaum v. Google, Inc.*, 845 N.Y.S.2d 695, 698-99 (N.Y. Sup. Ct. 2007); *Cahill*, 884 A.2d at 459-60 (applying a modified *Dendrite* test).

whether or not the Plaintiff has a valid cause of action at all, let alone whether it can meet the other First Amendment requirements. As the context of allegedly actionable statements is essential for a court to evaluate the legality of not only a discovery request but also of the adequacy of the underlying lawsuit, Plaintiff must tell the court the precise language it claims to be defamatory, to permit the court to analyze it's request for disclosure. *See, e.g.*, *Baker v. Lafayette College*, 532 A.2d 399, 402 (1987) ("The court must view the allegedly defamatory statements in context.")

Indeed, Plaintiff's failure to provide a single syllable of the allegedly defamatory posts suggests that it is trying to conceal from the Court the First Amendment defenses which would be obvious were the text before the Court. Similarly, its withholding of the name of its CEO- Steve Auckland- appears to be an attempt to obscure the parody of the tweets being issued under the names "Steve Dorkland" and "UnSteveDorkland." Even the use of the exact name of the complaining witness has been held to constitute protected parody- in fact, such use is the core of parody:

> "Plaintiff emphasizes that the name defendant chose to use is virtually identical to plaintiff's registered mark. True. But the use of that name was necessary to effect the parody. n14 Moreover, it was the use of that name that made it so obvious that the messages were sardonic and not real.
>
> n14 NYSE, 196 F.Supp.2d at 406 ("parody, in addition to referencing the original, simultaneously conveys the contradictory message that it is not the original.'") emphasis added.
>
> *Highfields Capital Mgmt. L.P. v. Doe*, 385 F. Supp. 2d 969, 979 (N.D. Cal. 2004).

**5. The Complaint Lacks Any Facts Proving A Prima Facie Defamation Case**

Having failed to list the speech complained of, Plaintiff fails the third Dendrite test as well- it has not even come close to meeting the requirements for pleading a *prima facie* case for defamation. The Ninth Circuit has recognized that California law requires the following elements to be pled:

> Under California law, to state a prima facie case of defamation a plaintiff must show (1) "the intentional publication" of (2) "a statement of fact" that (3) is "false," (4) "unprivileged," and (5) "has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645, 85 Cal. Rptr. 2d 397 (1999) (citing Cal. Civ. Code §§ 45 (defining libel), 46 (defining slander)) (citations omitted). *Desai v. Clark*, 2011 U.S. Dist. LEXIS 84690 (N.D. Cal. Aug. 2, 2011).

As noted above, the complaint is devoid of a single quote from the allegedly-defamatory tweets. It is therefore impossible for plaintiff to even begin to claim that it has met the tests- without the language complained of being specified, the Court cannot determine whether the statements are fact or opinion, much less analyze whether the statements are privileged under the First Amendment. Such an additional analysis is required before a defamation claim can survive:

> The scope of any action for defamation is circumscribed by the protections of the First Amendment to the United States Constitution. Consequently, a court "must make an independent examination of the whole record in order to ensure that there is no infringement of free expression." *Moyer v. Amador Valley Joint Union High School Dist*., 225 Cal. App. 3d 720, 724, 275 Cal. Rptr. 494 (1990) (citing *Milkovich v. Lorain Journal Co*., 497 U.S. 1, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990)) (citations omitted). For example, [*8] "pure statements of opinion" and "'statements that cannot reasonably [be] interpreted as stating actual facts about an individual'" receive Constitutional protection and cannot form the basis of a defamation claim. *James v. San Jose Mercury News, Inc*., 17 Cal. App. 4th 1, 12, 13, 20 Cal. Rptr. 2d 890 (1993) (quoting *Milkovich*, 497 U.S. at 20) (quotation marks omitted) (brackets in original); accord *Weller v. Am. Broad. Cos*., 232 Cal. App. 3d 991, 1000, 283 Cal. Rptr. 644 (1991) ("[T]he courts are . . . willing to protect statements that are clearly satirical, hyperbolic, imaginative or rhetorical. . . . Statements of fact that are not provably false also continue to be protected.") (citations omitted); *Moyer*, 225 Cal. App. 3d at 724. When determining whether a statement qualifies as a fact or opinion, the court examines the "totality of the circumstances" and asks "whether a reasonable fact finder could conclude that the . . . statements imply a provably false factual assertion." *Moyer*, 225 Cal. App. 3d at 724-25. *Desai v. Clark*, *supra*, 2011 U.S. Dist. LEXIS 84690, 7-8 (N.D. Cal. Aug. 2, 2011).

Because the Plaintiff is unwilling to allege precisely what language in the tweets it contends are defamatory, the Court cannot even begin to conduct this analysis. Nor can the Court analyze the last element- whether the statements are indeed defamatory. The subpoena must be quashed.

**C. The Claims Alleged on Behalf of Employees Are Defective**

There is yet another defect in the complaint. It appears to be asserting defamation claims on behalf of its employees: “numerous false and defamatory statements …about Plaintiff and Plaintiff’s employees;” (Complaint p.2, ln. 6-5); “used the posting to deliberately and maliciously harass Plaintiff’s Chief Executive Officer and other employees of Plaintiff.”(Complaint p.2 ln. 8-9.) A plaintiff corporation may not bring a defamation claim in its own name on behalf of its employees or officers. *See, e.g., Powers v. Ohio*, 499 U.S. 400, 410 (1991) (“In the ordinary course,

a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties."). To the extent that Plaintiff is asserting the rights of its employees, such pleading is improper and the claims must be dismissed.

**D. Plaintiff's "Computer Hacking" Claims Are Defective Smokescreens and Should Be Dismissed.**

Perhaps aware that its defamation claim is deficient, Plaintiff tries to hide it behind its first two causes of action- the first for violations of 18 U.S.C. § 1030 (Computer Fraud and Abuse Act) and the second for claimed violations of California's Comprehensive Computer Data access and Fraud Act. (Cal. Pen. Code § 502(c).) The allegations for each are so conclusory as to be utterly deficient under Federal pleading standards. As noted above, the only even remotely factual allegation in this regard comes in paragraph 10 of the complaint:

> 10. At least some of the information made public on Twitter by the Defendant was not known publicly, and *on information and belief, the only way that such information could be obtained* was by hacking into an email account. (Complaint §10) (emphasis supplied)

This language is incorporated into both the First and Second Causes of Action, which are otherwise rote recitations of the statutory prohibitions against unauthorized access and use. There is not a single fact supporting the concept of unauthorized intrusion alleged in either claim. While Defendant is aware that the U.K. is currently involved in a gaudy evisceration of various newspapers' editorial staffs due to what is alleged to have been systematic and widespread hacking of phones and emails, that context (or guilty conscience on the part of Plaintiff) does not support the intellectual leap that the Plaintiff offers – that Defendant must have done it here. Moreover, having failed to provide a single fact in a single tweet in support of this 'deduction,' Plaintiff leaves the Court to guess at what the fact or facts are that Defendant could have hacked that might conceivably support these claims. The CEO's shoe size? His request for lunch orders?

While such flights of fancy might be amusing to discuss, they cannot support the subpoena here. This form of pleading by reciting statutory basis and conclusions has been explicitly disallowed in the federal courts. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that a complaint must plead "enough facts to state a claim to relief that is plausible on its face"); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) It has also been rejected in the precise

context of attempts to secure the identity of an anonymous critic by Magistrate Judge Brazil in *Highfields Capital*:

> It is not enough for a plaintiff simply to plead and pray. Allegation and speculation are insufficient. The standards that inform Rule 8 and Rule 12(b)(6) offer too little protection to the defendant's competing interests. [**14] Thus, the plaintiff must adduce competent evidence -- and the evidence plaintiff adduces must address all of the inferences of fact that plaintiff would need to prove in order to prevail under at least one of the causes of action plaintiff asserts. In other words, the evidence that plaintiff adduces must, if unrebutted, tend [*976] to support a finding of each fact that is essential to a given cause of action. The court may not enforce the subpoena if, under plaintiff's showing, any essential fact or finding lacks the requisite evidentiary support. *Highfields Capital Mgmt. L.P. v. Doe*, 385 F. Supp. 2d 969, 974-976 (N.D. Cal. 2004)

Here, plaintiff has done no more than parrot the terms of the various statutory sections it contends apply to the conduct it thinks "must" have taken place. This is not the factual pleading required to establish liability for hacking. *Bell Atlantic Corp. v. Twombly*, *supra* at 570; *Ashcroft v. Iqbal*, *supra* 129 S. Ct. at 1949 Accordingly, Plaintiff's "formulaic recitation of the elements" of the defamation cause of action has not and cannot meet its obligation to provide *prima facie* evidence in support of its hacking claims. An instructive comparison can be found in *Facebook, Inc. v. Power Ventures, Inc.*, 2010 U.S. Dist. LEXIS 93517 (N.D. Cal. July 20, 2010). In the *Power Ventures* case, the District Court, ruling on a motion to dismiss a Section 502 claim based on facts in the pleading, described the requisite level of specificity required to render a claim "plausible on its face:"

> However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986); *see also McGlinchy v. Shell Chem. Co*., 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). *Facebook, Inc. v. Power Ventures, Inc*., 2010 U.S. Dist. LEXIS 93517 (N.D. Cal. July 20, 2010)

The Court is no doubt familiar with the type of evidence that can be adduced to show unauthorized computer intrusion: access logs showing the date and time of the access alleged to be

unauthorized; history files showing copies being downloaded – all the myriad of technical details available to a systems administrator faced with unauthorized intrusion. Here, Plaintiffs would have the Court find that the subpoena is adequately supported by their assertion that some of the information in the unspecified tweets is so secret that only hacking could have elicited it. This is preposterous. (As well as being contradicted by the portions of the pleading which lable the tweets "false." They can't have it both ways- either Doe is making up false and defamatory stories about the CEO, or he has stolen the secrets of the inner sanctum.)

Plaintiff itself even alleges an alternate theory of how the information could have been acquired in its complaint: Defendant is conducting surveillance on its employees. (Complaint paragraph 13.) As long as the Court is being forced to speculate, two other candidates should be added to the list: current employees are feeding Defendant Doe information, or Defendant Doe is one or more current employees who are merely laughing behind their hands every time the CEO walks by. It is clear why these guesses are not pled with the others- even Plaintiff recognizes that such sources would not be actionable as hacking. The point, however, is clear- the complaint does not establish a *prima facie* case for either hacking claim, and the subpoena cannot be sustained based on either.

**E. The Impersonation Claim is Also Absurd**

The last claim in the complaint is the Fourth Cause of Action for Impersonation, pled under California Penal Code Section 528.5, seeks to hold Doe liable for "impersonating" Plaintiff's employees- no doubt its CEO Mr. Auckland. Again, the factual deficits created by the failure to plead any of the tweets destroy this cause of action. However, this claim cannot be fixed. As noted above in *Highfields*, the use of even the actual name of the plaintiff is protected if the tweets are seen as parody. *Highfields Capital Mgmt. L.P. v. Doe, supra*, 385 F. Supp. 2d at 979. Indeed, the U.K. press is full of articles about this imbroglio, all of which explicitly acknowledge that the dispute involves Plaintiff suing Defendant as a "spoof" tweeter. (Sommers Dec at §3, Exhibits A-

D.) As the headlines of those July 30 articles indicate, the British media sees this as parody- a "spoof" twitter account being used to mock Plaintiff's CEO:

**Exhibit A (The Guardian)**: "Northcliffe accuses spoof Twitter user of email hacking,"

**Exhibit B(The Press Gazette)**: "Is this the end of satire? Grey Cardigan's take on Northcliffe spoof Twitter account Dispute".

**Exhibit C (The Press Gazette** ): "Northcliffe seeks 'punitive damages' from spoof tweeter,"

**Exhibit D (BBC)**: "Spoof newspaper executive tweeter accused of hacking,"

Plaintiff cannot be serious in contending that these tweets constitute an actual impersonation of its CEO, even assuming that Plaintiff had standing to bring such a claim. If anything reveals just how intellectually threadbare Plaintiff's attempt to subpoena Twitter is, it is this last claim. The Court should dismiss this claim out of hand.

## III. CONCLUSION

The Court should quash the subpoena and permit Defense counsel to file a motion for sanctions.

Dated: July 31, 2012

SOMMERS & SCHWARTZ LLP

s/Frank F Sommers

______________________________

By: Frank F Sommers
Attorneys for Defendant Doe